was therefore addressed to the court and it instructed the jury as to the fact.

Counsel for defendant insists that the office of superintendent for Oregon was abolished after June 30, by operation of the act aforesaid, and that, in any view of the matter, it was then abolished by the action of the president, as shown by the communication received from the department on June 28; therefore the ruling was erroneous and a new trial ought to be granted. ·

The act of congress, although it declares in so many words that "the offices of four of the superintendents * * * are hereby abolished," of itself could not produce that effect, because it does not mention or indicate any particular four superintendents. In the nature of things the act could not take effect as to any particular superintendency until the president so declared. If he had taken no action in the premises, the act would have remained inoperative and without effect, for uncertainty. Until the president gave effect to it by assigning "the remaining four superintendents" to particular "agencies," and thereby impliedly indicating the four whose offices were to be abolished, or until he dispensed "with any or all of said superintendencies," none of them were abolished.

The execution of the act was by its terms committed to the president. If he did not abolish the office in Oregon, Odeneal remained superintendent of Indian affairs. The only question is, was he continued in office until September 1? The payment of his salary until that date is itself prima facie evidence of the fact. It is not to be presumed that his salary was paid for two months after he was out of office. Then, there are the other circumstances pointing to the same conclusion. The motion for new trial is overruled.

[Upon the question of what sentence ought to be imposed upon the defendant he was examined as a witness in his own behalf. The court sentenced him to pay a fine of $100 and the costs, taxed at $146, and one day's imprisonment in the county jail.] [2]

---

## Case No. 16,746.

UNITED STATES v. WISE.

[1 Cranch, C. C. 546.] [1]

Circuit Court, District of Columbia. July Term, 1809.

PRISON BOUNDS—RIGHTS OF PRISONERS.

Every prisoner not committed for treason or felony, is entitled to the benefit of the prison bounds, upon giving security.

Debt on prison-bounds bond; oyer of bond and condition; and general demurrer to the declaration. The question is whether a prisoner, committed at the suit of the United

2 [From 20 Int. Rev. Rec. 122.]
1 [Reported by Hon. William Cranch, Chief Judge.]

States, not for treason or felony, is entitled to the prison's bounds, upon giving security under the act of congress of 3d of March, 1803 (2 Stat. 237).

THE COURT (DUCKETT, Circuit Judge, absent) were of opinion that the bond was good and well taken.

Judgment for the plaintiffs on the demurrer.

---

## Case No. 16,746a.

UNITED STATES v. WISE et al.

[1 Hayw. & H. 82.] [1]

Criminal Court, District of Columbia. May 14. 1842.

MEMBERS OF CONGRESS—PRIVILEGE FROM ARREST
—BREACH OF PEACE.

The plea of privilege will not avail a member of congress to prevent him from being arrested on a warrant that charges "that there was probable cause to believe a breach of the peace was about to be committed."

On the 12th of May, 1842, Judge Thruston issued a warrant charging that "there is probable cause to believe that the Honorable H. A. Wise and the Honorable Edward Stanly, members of the house of representatives, are about to commit a breach of the peace by fighting a duel, and that preparations are now making by said parties to commit said breach of the peace." Mr. Wise was arrested and the return made by the marshal before Judge Morsell, of the circuit court.

Mr. Wise appeared in person.

P. R. Fendall, U. S. Dist. Atty.

Mr. Wise denied the right of any judge or justice in this district to require of him to give or sign any bond obliging him to keep the peace outside of the district, and pleaded his privilege from arrest as a member of congress, the warrant not charging actual breach of the peace.

On the 14th of May, 1842, the honorable Messrs. Goode and Hunter of Virginia appeared as counsel for Mr. Wise before Judge Dunlop, of the criminal court.

Mr. Goode maintained the following propositions: 1st. That the warrant does not state on whose information the charge was made. 2d. That the warrant charges no specific offense. 3d. That the defendant, being a member of the house of representatives, he is privileged from arrest, except for an actual breach of the peace which is not charged in the warrant.

Mr. Hunter cited the proceedings in the court of common pleas in England and the decision of Chief-Justice Pratt, settling the question as raised in the third objection[2] in

1 [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]
2 19 State Tr. 987: The third matter insisted upon for Mr. Wilkes is that he is a member of parliament (which has been admitted by the king's sergeants) and entitled to privilege to be free from arrests in all cases except treason, felony and actual breach of the peace, and,